IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| OSIRIS C. TERRY,<br><br>            Plaintiff,<br><br>      v.<br><br>MERRICK B. GARLAND[1] in his official capacity as ATTORNEY GENERAL, DEPARTMENT OF JUSTICE (FEDERAL BUREAU OF PRISONS),<br><br>            Defendant. | Case No. 21-cv-00007-DKW-KJM<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND TRANSFERRING REMAINING CLAIMS** |

Plaintiff Osiris Terry asserts that the Federal Bureau of Prisons ("BOP" or "Government") discriminated against him during his employment as a correctional officer by: (1) inappropriately reassigning him after an inmate incident; (2) creating a hostile work environment by assigning him to a housing unit with an inmate who had threatened him; (3) initiating a frivolous investigation into his conduct after he sought to file a grievance; and (4) failing to hire him into positions at other correctional facilities.  The BOP has moved to dismiss the first three of

---

[1]While this suit initially named then-Attorney General William Barr as a Defendant, Merrick Garland, who became Attorney General of the United States on March 11, 2021, has been automatically substituted in Barr's place, pursuant to Federal Rule of Civil Procedure 25(d).

these claims, arguing Terry has failed to exhaust his administrative remedies as to those claims.  The BOP seeks dismissal or, in the alternative, transfer of the fourth claim because Hawai'i is an improper venue.

As explained below, the Court agrees that Terry has failed to exhaust his administrative remedies as to his first three claims.  However, the Court finds Hawai'i to be a proper venue for Terry's fourth claim.  Nonetheless, for the convenience of the parties and witnesses and in the interests of justice, the Court exercises its discretion to transfer this claim to the Western District of Texas, Austin Division, near where Terry presently resides.  Accordingly, the BOP's motion to dismiss Terry's first three claims and to transfer the fourth is GRANTED.

## RELEVANT BACKGROUND

### I.    Factual Background

In April 2016, Terry worked for the BOP as a correctional officer at FDC Honolulu, a federal correctional facility.  Dkt. No. 4 at 3; Dkt. No. 4-1 at 2.  On April 30, 2016, while Terry was supervising inmates in a visiting room, an inmate became insubordinate and began "using confrontational language and postur[ing] in a threating manner."  Dkt. No. 4-1 at 2.  The inmate was removed from the visiting room but otherwise suffered no consequence for his insubordination.  *Id.* A short time after the incident, Terry was removed from his post and reassigned.

2

*Id.*  He alleges this decision was due to "a false report written by Correctional Officer Bautista and Lieutenant Soles." *Id.*  Presumably, the "false report" concerned the inmate incident in the visiting room.  *Id.*; *see also* Dkt. No. 16-4 at 6 (EEO Counselor report recounting Lieutenant Soles' recollection of the visiting room incident).

Terry's new assignment was supervising a unit of inmates, including the insubordinate inmate from the visiting room incident on April 30, 2016.  Dkt. No. 4-1 at 2.  In May 2016, Terry sought informal counseling from his local Equal Employment Opportunity ("EEO") Counselor concerning this assignment.  *Id.*; *see also* Dkt. No. 16-4.  Sometime thereafter, Terry alleges he "was retaliated [against] with a frivolous investigation."[2]  Dkt. No. 4-1 at 2; *see also* Dkt. No. 16-5.  While imprecise, the investigation appears to have been opened around June 2016 and closed on December 30, 2016.  Dkt. No. 16-5 at 11.  It is unclear whether this investigation resulted in any sanction against Terry.  *See id.*; *see also* Dkt. No. 4-1.

Terry further alleges that he was discriminated or retaliated against when the BOP refused to hire him for two positions at a different correctional facility: FCI Bastrop, which is located in Bastrop, Texas.  Dkt. No. 4-1 at 2 (explaining the positions at issue are BAS-2017-0006 and BAS-2017-0017); *see also* Dkt. No. 16-

---

[2]Presumably, this investigation concerned the April 30, 2016 incident in the visiting room, but it is wholly unclear from the face of the complaint.  *See* Dkt. No. 16-7 (in his formal EEOC Complaint, Terry connects the "frivolous investigation" to the visiting room incident).

3 at ¶ 4 (a BOP Human Resource Manager explaining "BAS" stands for "FCI Bastrop").  For position BAS-2017-0006, two reference checks were submitted by supervisors at FDC Honolulu: one by Lieutenant Soles and the other by Assistant Warden David Bruce.  Dkt. No. 16-11 at 15.  Both Soles and Bruce gave Terry "average" ratings in all categories.  *Id.*

Two reference checks from FDC Honolulu supervisors were also provided with regard to Terry's application for position BAS-2017-0017.  *Id.*  Assistant Warden Chris Ulrich rated Terry "average" in "administrative skills," "oral communication skills," and "analytical ability," and "above average" in all other categories.  *Id.*  Lieutenant Shawn Traber rated Terry "below average" in "oral communication skills" and "average" in all other categories.  *Id.* at 16-11 at 15-16. The applicants ultimately chosen for both positions received reference checks rating them "above average" in all categories.  *Id.*

## II.  **Procedural Background**

### A.  **Informal Requests for Counseling**

#### i.  **Visiting Room Incident and Reassignment**

On May 26, 2016, Terry contacted an EEO Officer concerning his reassignment following the April 30, 2016 visiting room incident.  Dkt. No. 16-4. This informal claim was catalogued as BOP-2016-00827.  Dkt. No. 16-2 ¶ 6.  The EEO Officer issued a Notification of Right to File a Discrimination Complaint on

August 24, 2016.  Dkt. No. 16-4 at 3.  There is no evidence in the record that Terry ever filed a formal EEO complaint related to his reassignment following the April 30, 2016 visiting room incident.  *See* Dkt. No. 16-2 at ¶¶ 7–8 (BOP EEO Officer declaring no formal EEO complaint was filed pursuant to informal claim BOP-2016-00827); *see also* Dkt. No. 16-7 at 2 (Terry's only formal EEO complaint in the record referencing informal incident number BOP-2017-00609, not BOP-2016-00827); Dkt. No. 16-11 at 10 n.3.

ii     **Investigation**

On January 23, 2017, Terry contacted an EEO Officer concerning the alleged retaliatory investigation initiated against him.  Dkt. No. 16-5 at 7.  This informal claim also alleged inadequate union representation due to, potentially, conflicts of interest among union leaders.  *Id.* at 11.  This informal claim was catalogued as BOP-2017-00609.  Dkt. No. 16-2 at ¶ 9.  The EEO Counselor issued a Notification of Right to File a Discrimination Complaint on May 1, 2017.  Dkt. No. 16-6; *see also* Dkt. No. 16-5 at 7.

B.     **Formal EEO Complaint**

Terry filed his Complaint of Discrimination with the Department of Justice ("DOJ") EEO Office on September 5, 2017.  Dkt. No. 16-7.  At the top of this EEO complaint appears the reference number BOP-2017-00609, referring to his January 23, 2017 informal retaliation and union-related claims.  *Id.* at 2.

Notwithstanding that reference, Terry's complaint recounts the April 2016 visiting room incident, his filing a request for counseling with his EEO Counselor over his reassignment after that incident, and the investigation initiated after he filed that request. *Id.* at 3. He also complains that his union had not appropriately represented him—possibly due to a conflict of interest among union leaders—and that he had been "black ball[ed] from job relocation." *Id.* at 3–4, 6–7. Though it is not clear from the EEO complaint itself, Terry appears to claim that his inability to be hired at another correctional facility may have been related to negative references FDC Honolulu supervisors had been providing to hiring personnel at the federal correction facilities to which he was applying. *Id.* at 7; *see also* Dkt. No. 16-14 (Terry asserting that he was retaliated against when FDC Officers provided "unfavorable evaluation[s]").

Pursuant to Terry's September 2017 EEO complaint, the issues accepted for investigation by the BOP's EEO Office were: (1) whether the union neglected to file a defamation case on Terry's behalf; and (2) whether his non-selection by several other federal correctional facilities constituted discrimination on the basis of sex or race or was retaliation for his prior EEO activity. Dkt. No. 16-9. The first of these claims was summarily dismissed at the administrative level and has not been raised in this litigation. Dkt. No. 16-9 at 3–4; *see also* Dkt. No. 4-1.

On June 27, 2019, the DOJ EEO Office issued its decision finding the BOP had not discriminated against Terry on the basis of race or sex and had not retaliated against him based on his prior EEO activity when it declined to hire him for positions at other correctional facilities.  Dkt. No. 16-11.  The Equal Employment Opportunity Commission ("EEOC") affirmed that decision on December 17, 2019.  Dkt. No. 16-13.  Terry's request that the EEOC reconsider its decision was denied on November 5, 2020.  Dkt. No. 16-17; *see also* Dkt. Nos. 16-14, 16-15, 16-16.  That denial also granted Terry the right to file a civil action. Dkt. No. 16-17 at 3.

### C.    Motion to Dismiss

Terry's complaint, filed *pro se* on January 4, 2021, asserts Title VII and NO FEAR Act[3] claims against the BOP.  Dkt. No. 4.[4]  He alleges the BOP discriminated against him on the basis of race (African American/Native American), color (black), and/or sex (male) and retaliated against him for attempting to file an EEO complaint by: (1) inappropriately reassigning him after an inmate incident; (2) creating a hostile work environment by assigning him to a housing unit with an inmate who had threatened him; (3) initiating a frivolous

---

[3]This is a reference to the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, P.L. 107–174.
[4]Terry appears to have filed two complaints.  Dkt. Nos. 1, 4.  The two filings do not appear to differ in any way; however, the Court will treat the later-filed complaint as the operative pleading.

investigation into his conduct after he sought to file an EEO complaint, and (4) failing to hire him into positions at other correctional facilities. *Id.* at 3; Dkt. No. 4-1 at 2–3. On May 4, 2021, the BOP filed a motion to dismiss all claims or, in the alternative, to dismiss the first three and transfer the fourth to another venue. Dkt. No. 16. Terry filed what the Court construes as a response on May 12, 2021, Dkt. No. 19,[5] to which the BOP replied on July 22, 2021, Dkt. No. 20. This order follows.

## LEGAL STANDARD

### I.   Motion to Dismiss Under Rule 12(b)(1)

On a motion to dismiss, "[t]he party asserting jurisdiction bears the burden of establishing subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008); *accord Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). How the Court resolves the motion depends on whether the defendant raises a "facial or factual" jurisdictional attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A defendant asserts a "facial" challenge when he accepts the plaintiff's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* A defendant raises a "factual" challenge if he

---

[5]Though the temporal proximity of the filings suggests the Government's motion prompted this filing from Terry, Terry's brief is almost entirely non-responsive to the Government's arguments.

"contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"When the defendant raises a factual attack, . . . [t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met," and "the district court may resolve those factual disputes itself." *Id.* at 1121 (citations omitted); *see also Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.

## II.   <u>Motion to Dismiss Under Rule 12(b)(6)</u>

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief, as required by Rule 8(a)(2). *Id.* at 679.

### III.   <u>Pro Se Status</u>

The Court liberally construes a pro se litigant's filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim, *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th

Cir. 1982), and may deny leave to amend where amendment would be futile, *see, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

## DISCUSSION

The Government argues that the only claim properly in Federal Court is Terry's allegation that the BOP discriminated or retaliated against him when it did not select him for two available positions at a Texas correctional facility.  Dkt. No. 16-1 at 14–24.  In a factual challenge to this Court's subject matter jurisdiction,[6] the Government claims Terry has failed to exhaust his administrative remedies as to his other claims—*i.e.*, (1) discrimination/retaliation in reassigning Terry after the April 2016 visiting room incident; (2) creating a hostile work environment by assigning Terry to supervise the inmate who had threatened him; and (3) launching an allegedly frivolous investigation into his conduct after he sought to file an EEO complaint.  *Id.* at 14–21.  As further detailed below, the Court agrees with the Government's exhaustion arguments.  Accordingly, these three claims are DISMISSED.

While the Government appears to concede Terry's failure-to-hire claim is properly in Federal Court, it argues that Hawaiʻi is not a proper venue to hear it. *Id.* at 21–24.  It thus seeks dismissal of the claim or, in the alternative, transfer of

---

[6]Because the Government raises a factual attack, the Court may consider evidence outside the complaint in resolving the jurisdictional question.  *See Safe Air for Everyone,* 373 F.3d at 1039.

this claim to the Western District of Texas, Austin Division. *Id.* The Court finds that because some of the alleged retaliatory conduct—*i.e.*, FDC Honolulu supervisors providing what Terry believes to be lower-than-deserved reference scores—occurred within this District, Hawaiʻi is a proper venue to hear this claim. Nonetheless, for the convenience of the parties and witnesses and in the interest of justice, the Court exercises its discretion to transfer the case to the Western District of Texas, Austin Division.

## I.     **<u>NO FEAR Act Claim</u>**

Terry's NO FEAR Act Claim must be dismissed because that Act "does not create a substantive right for which the government must pay damages, but rather, it requires federal agencies to repay any discrimination or whistleblower damage awards out of agency funds rather than the General Fund of the Treasury." *Glaude v. United States*, 248 F. App'x 175, 177 (Fed. Cir. 2007); *see also Davis v. Brennan*, 2019 WL 2932642, at \*3 (C.D. Cal. Mar. 20, 2019) (finding that the decisions addressing the question of whether the NO FEAR Act provides a private right of action "uniformly conclude" it does not); P.L. 107–174. Accordingly, this claim is DISMISSED WITH PREJUDICE.[7]

---

[7]In response to the Government's motion, Terry argues several other sources of law support his claims: the Federal Tort Claims Act, *Bivens*, 42 U.S.C. § 1331, and the Tucker Act. Dkt. No. 19 at 6–7. First, his complaint fails to advance any of his claims pursuant to these sources of law. *See* Dkt. Nos. 1, 4. Even if it had, such claims cannot lie because the conduct complained of concerns allegedly discriminatory and retaliatory employment decisions by the federal government. *See* Dkt. No. 4. The exclusive remedy for such allegedly unlawful conduct in an

## II.   <u>Incident/Investigation Claims</u>

The Government argues that because the BOP's EEO Office did not

investigate and the EEOC did not issue a final order as to Terry's claims of (1)

discrimination in reassignment following the April 2016 visiting room incident, (2)

the allegedly hostile work environment created by his reassignment, or (3) the

allegedly retaliatory investigation initiated after Terry sought to file an EEO

complaint, and because Terry did not administratively pursue those claims, those

claims have not been exhausted, and the Court lacks jurisdiction to hear them.

Dkt. No. 16-1 at 14–21.  The Court agrees.

To establish subject matter jurisdiction over a Title VII claim, a plaintiff

must exhaust his administrative remedies.  *B.K.B. v. Maui Police Dep't*, 276 F.3d

1091, 1099 (9th Cir. 2002) (citation omitted).  "Under Title VII, a plaintiff must

exhaust her administrative remedies by filing a timely charge with the EEOC, or

the appropriate state agency, thereby affording the agency an opportunity to

investigate the charge." *Id.* (citing 42 U.S.C. § 2000e–5(b)).  "The jurisdictional

scope of the plaintiff's court action depends on the scope of the EEOC charge and

investigation." *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 20003).

"Abandonment of the administrative process may suffice to terminate an

---

employment relationship with the federal government is Title VII.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976).  Accordingly, to the extent he brings any of his claims pursuant to these other sources of law, they are DISMISSED WITH PREJUDICE.

administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review." *Vinieratos v. U.S. Dep't of Air Force Through Aldridge*, 939 F.2d 762, 770 (9th Cir. 1991).

Terry abandoned his claims concerning his reassignment and the alleged hostile work environment that was subsequently created when he failed to proceed with the administrative process after receiving a notice of right to file an EEO complaint. He was granted the right to file on August 24, 2016. Dkt. No. 16-4 at 3. An individual has 15 days in which to file a formal EEO complaint after such notice. 29 C.F.R. § 1614.105; *see also* Dkt. No. 16-6 (Notice of Right to File a Discrimination Complaint provided to Terry including this 15-day deadline).[8] There is no indication in the record that Terry filed a formal EEO complaint on these issues within the 15 days allowed or anytime thereafter. Dkt. No. 16-2 ¶¶ 7–8 (BOP EEO Officer declaring no formal EEO complaint related to this informal claim was ever filed). The DOJ EEO Office came to a similar conclusion when, in reference to the reassignment, it found that it had not adjudicated that claim. Dkt. No. 16-11 at 10 n.4. Accordingly, the Court finds these claims related to Terry's

---

[8]This particular Notice of Right to File a Discrimination Complaint pertains to Terry's *second* informal claim, which claimed retaliation for filing his *first* informal claim concerning his reassignment. While a copy of such notice pertaining to his reassignment-related informal claim is not in the record, the EEO Counselor's report indicates this notice was given to Terry on August 24, 2016. *See* Dkt. No. 16-4 at 3.

reassignment, including his claim of a hostile work environment, have not been exhausted.

While facts pertaining to the allegedly frivolous investigation into Terry's conduct appear in both his informal claim, Dkt. No. 16-5, and his formal EEO complaint, Dkt. No. 16-7, any claim related to that investigation was also abandoned.[9] After Terry filed his formal EEO complaint, the DOJ EEO Office informed Terry that it had accepted for investigation (1) his claim that his union had failed to file a defamation claim on his behalf, and (2) his claim that he was discriminated/retaliated against when several correctional facilities did not select him for positions to which he had applied. *Id.* The notice said nothing of his 2016 reassignment or of the allegedly retaliatory investigation launched against him. *Id.*; *see also* Dkt. No. 16-2 at ¶¶ 13–14. Further, the notice explicitly stated that he could appeal the issues not accepted for investigation. *Id.* at 4–5. There is no evidence in the record that Terry ever challenged the limited claims accepted for investigation or otherwise sought to advance either his reassignment- or investigation-related claims. *See* Dkt. No. 16-2 at ¶ 14. Thus, Terry administratively abandoned these claims.

---

[9] The Court notes that, after Terry received permission to do so, he failed to file his formal EEO complaint *within the 15-day deadline*. *See* Dkt. No. 16-6 (notice of right to file Complaint issued on May 1, 2017); Dkt. No. 16-7 (formal Complaint filed on September 7, 2017). Nonetheless, the DOJ EEO Office acknowledged the Complaint. *See* Dkt. No. 16-2 at ¶ 12; Dkt. No. 16-8.

Because Terry failed to see his reassignment- and investigation-related claims through the administrative process, those claims were never exhausted, and this Court lacks jurisdiction to hear them. *See Vinieratos*, 939 F.2d at 770. Accordingly, they are DISMISSED.

## III.   <u>Non-Selection Claims</u>

At least as it pertains to the motion before the Court, there appears to be no dispute that Terry's claims that the BOP discriminated and/or retaliated against him by failing to select him for two available positions at FCI Bastrop are properly in Federal Court. *See* Dkt. No. 16-1 at 21–24. The only issue is whether venue in the District of Hawai'i is proper. *See id.* It is.

A Title VII claim may be brought "in any judicial district in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . ." 42 U.S.C.A. § 2000e-5(f)(3). The Court agrees with the Government that Hawai'i is not a proper venue pursuant to the latter two options—*i.e.*, where relevant records are maintained and administered, and where Terry would have worked. Clearly, most relevant employment records are in Bastrop, Texas; likewise, Terry would have worked in Bastrop, Texas but for the claimed discrimination/retaliation. But

Hawaiʻi is still a proper venue because at least some of the unlawful employment practices alleged by Terry occurred in this District.  *See id.*

Terry claims, in part, that his supervisors at FDC Honolulu affected his hiring chances at FCI Bastrop by giving him references that he considered subpar and undeserved.  *See* Dkt. No. 16-14 (Terry explicitly stating this in his request for the EEOC to reconsider its determination); *see also* Dkt. No. 16-7 at 7 (Terry's formal EEO complaint stating he was told he had been "black ball[ed] from a few job locations" as retaliation for his attempting to file an EEO complaint).  Whether warranted or retaliatory, those reference checks were clearly given by FDC Honolulu personnel, presumably from the District of Hawaiʻi.  Thus, it is clear some of the alleged unlawful conduct occurred within this District and venue here, pursuant to Title VII, is proper.

Nonetheless, the Court finds a transfer of venue is warranted.  As relevant here, this Court has the discretion to transfer a civil case, "[f]or the convenience of parties and witnesses [and] in the interest of justice," to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "In applying § 1404(a), the Court must engage in a two-part inquiry.  First, the Court determines whether the action could have been brought in the transferee court. Second, the Court considers whether the transfer will enhance the convenience of the parties and witnesses, and is in the interests of justice."  *Lee v. Corrections Corp. of*

*America*, 525 F. Supp. 2d 1238, 1243–44 (D. Haw. 2007) (citations and internal quotation marks omitted).

As discussed above, it is clear this case could have been brought in the Western District of Texas, Austin Division, as that is the court and division in which most of the relevant employment records would be located (*i.e.*, at FCI Bastrop) and where Terry would have worked but for the alleged discrimination/retaliation. *See* 42 U.S.C. § 2000e-5(f)(3). Thus, the Court also considers the second prong, which requires evaluation of the: (1) convenience to the parties; (2) convenience to any witnesses; and (3) interests of justice.[10]  In assessing the interests of justice, the Court must consider both public and private interests. *See Lee*, 525 F. Supp. 2d at 1244 (citing *Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F. Supp. 2d 1232, 1243 (D. Haw. 2003)).

Based on the record before the Court, the Western District of Texas, Austin Division is clearly the more convenient forum for both parties. The Government

---

[10]The Ninth Circuit has more specifically instructed courts to consider the following non-exhaustive list of factors in determining whether transfer is warranted:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

has explicitly argued this.  Dkt. No. 16-1 23–24.  And while Terry has not

conceded that the transferee district would be more convenient for him, he has not

contested it.  *See* Dkt. No. 19.  Further, Terry no longer resides in Hawaiʻi, as he

apparently did at the time of the alleged unlawful conduct.  He currently lives in

Westworth Village, Texas, which is just a few hours' drive from Austin.  *See* Dkt.

No. 4 at 2 (Terry listing his current address as Westworth Village, Texas); *see also*

Dkt. No. 16 (certificate of service on Terry in Westworth Village, Texas).  It would

clearly be easier for Terry to litigate in Texas, just a few hours' drive from where

he resides, as compared to Hawaiʻi.

Likewise, the Court finds the transferee district would be more convenient

for most potential witnesses.  As Terry's claims pertain to employment decisions

made by FCI Bastrop, it stands to reason that the bulk of relevant witnesses work

and reside in or near Bastrop, Texas.  *See* Dkt. No. 16-3 at ¶ 7 (BOP Human

Resource Manager declaring the employment decisions at issue "occurred in

Texas").  While the FDC Honolulu supervisors who provided allegedly subpar

references do not reside in Texas, on balance, the Court finds that the transferee

district is also the more convenient forum for witnesses.  This is particularly true

because the evidence likely to be produced in the case is held by witnesses at or affiliated with FCI Bastrop.[11]

Finally, the Court finds the interests of justice would be served by transferring the case.  Transferring the case would likely decrease litigation costs for both parties and, owing to its convenience, possibly expedite proceedings. Further, the transferee forum has an interest in the case, as FCI, Bastrop is located within it.  Given these facts, the Court finds the interests of justice are better served by having the case litigated in the Western District of Texas, Austin Division.

In sum, the Court finds that, because it will be more convenient for parties and witnesses and in the interests of justice, transfer of the case is warranted.

## **CONCLUSION**

The Government's motion to dismiss, Dkt. No. 16, is GRANTED IN PART. The following claims are DISMISSED WITH PREJUDICE:

1.    The BOP discriminated/retaliated against Terry by reassigning him after the April 2016 visiting room incident;

2.    The BOP created a hostile work environment by requiring Terry to supervise a unit of inmates, including an inmate who had previously threatened/acted hostile toward him; and

---

[11]The Court notes that Terry appears to have already produced his own performance reviews from his work at FDC Honolulu, thus negating any need for such production.  *See* Dkt. No. 4-1.

3. The BOP discriminated/retaliated against Terry by launching an investigation in 2017 into his conduct.

The remaining claims—that the BOP discriminated or retaliated against Terry by failing to select him for two positions at FCI Bastrop to which he had applied—survive.  However, the Court exercises its discretion to transfer these remaining claims to the Western District of Texas, Austin Division.  The Clerk is instructed to affect such transfer forthwith.

IT IS SO ORDERED.

Dated: August 12, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Terry v. Garland*; Civil No. 21-00007-DKW-KJM; **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND TRANSFERRING REMAINING CLAIMS**