## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **OSIRIS C. TERRY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:21-CV-00701-RP** |
| | § | |
| **FEDERAL BUREAU OF PRISONS,** | § | |
| **MERRICK B. GARLAND,** | § | |
| **ATTORNEY GENERAL** | § | |
| **(SUBSTITUTED FOR WILLIAM P.** | § | |
| **BARR, FORMER ATTORNEY** | § | |
| **GENERAL OF THE UNITED** | § | |
| **STATES, PURSUANT TO FRCP** | § | |
| **25(D);** | § | |
| *Defendants* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before this Court is Defendants' Motion for Summary Judgment filed on October 31, 2022, Dkt. 49. On November 10, 2022, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72 and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   BACKGROUND

This is a Title VII case in which pro se Plaintiff Osiris Terry is alleging claims of sex discrimination, race discrimination, and retaliation against his employer the Bureau of Prisons. Terry, who was an employee at FDC Honolulu,

applied for lateral transfer to two positions at FCI Bastrop, for which he was not selected. He alleges that this non-selection was in retaliation for EEO-protected activities that occurred during his employment at FDC Honolulu, and also constitutes discrimination based on both his race and sex.

Terry began working as a correctional officer at FDC Honolulu in April 2014. Dkt. 49-1. Terry alleges that on April 30, 2016, an inmate at FDC Honolulu became "insolent" and made a "terroristic threat" toward him in the visitation room. Dkt. 16-4; Dkt. 4-1 at 3; Dkt. 49-16. Terry maintains that he remained professional during the verbal altercation, but Officer Dwayne Bautista claims he observed Terry yelling at the inmate. Dkt. 49-16. Shortly after the incident, Lieutenant James Soles spoke to Terry, the inmate, and other officers to learn more about the incident. *Id.*; *see also* Dkt. 16-4, at 6. According to Terry, the inmate was not sent to a Special Housing Unit, and later Terry was directed to work on the inmate's housing unit after the threatening incident. *Id.*

Terry asserts that if the incident had happened with a Caucasian officer, the inmate would have been sent to a special housing unit, and the staff member would have been protected. *Id.* Instead, according to Terry, he was discriminated against by Captain Steven Reiser when Terry was moved to a different post within FDC Honolulu after he reported that the inmate had been insolent towards him. *Id.* Terry alleges Bautista and Lieutenant Soles created a "false report" about the incident and then Captain Reiser, Lieutenant Martinez, and Lieutenant Soles "attempted to place Terry in the same unit with this inmate twice." Dkt. 4-1, at 3.

2

On May 26, 2016, Terry informally contacted a BOP Equal Employment Office counselor to report this inmate incident. Dkt. 16-4. Following EEO counseling, Terry was provided a Notice of Right to File on August 24, 2016, but he never filed a formal EEO complaint of discrimination or hostile work environment for the inmate incident. Dkt. 16-2. On January 23, 2017, Terry sought counseling concerning allegations of discrimination and retaliation based on his race and sex. Dkt. 16-5. He also alleged he faced reprisal for initiating the EEO complaint in 2016. *Id.*

After this incident Terry sought employment at numerous other correctional facilities within BOP, including two at FCI Bastrop. Dkt. 49-1. He alleges that in January 2018, he learned he was not selected for the positions of: (1) Correctional Officer (Senior Officer), vacancy announcement number BAS-2017-0006; and (2) Correctional Officer (Senior Officer), vacancy announcement number BAS-2017-0017. *Id.*; Dkt. 4-1, at 3. Terry's non-selection for these positions forms the basis for this suit. The parties do not dispute that Terry exhausted his administrative remedies for these claims, and the EEOC informed him of his right to file a civil action in the appropriate United States District Court. Dkt. 16-13, at 3; Dkt. 16-17, at 2-3.

Terry filed suit in the United States District Court for the District of Hawaii. Dkt. 4. Terry initially alleged claims of hostile work environment, discrimination based on race/color (Black/Native American), sex (male), and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, *et seq.*,

and the No Fear Act. *Id.* Specifically, he alleges BOP (1) inappropriately reassigned him after an inmate incident; (2) created a hostile work environment by assigning him to a housing unit with an inmate who had threatened him; (3) initiated a frivolous investigation into his conduct after he sought to file a grievance; and (4) failed to hire him in 2017 for two positions at FCI Bastrop in Texas. Terry claims his non-selection for those two positions constituted sex and race discrimination as well as retaliation for his prior EEO activity. Dkt. 4-1, at 3. The Hawaii court dismissed Terry's first three claims due to his failure to exhaust administrative remedies and transferred the remaining claims to the United States District Court for the Western District of Texas, where FCI Bastrop is located. Dkt. 22. Defendant now moves for summary judgment on Terry's remaining claims related to his non-selections for the two positions at FCI Bastrop.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not

4

make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.   ANALYSIS

### A.   BOP Not Proper Party Defendant

Terry sued both Attorney General Merrick Garland and the BOP. Defendants move to dismiss the BOP as it is not the proper defendant to Terry's Title VII claim. Dkt. 49, at 10. Terry does not object to the dismissal of the BOP in his Response. Dkt. 50. "A Title VII suit against the federal government [must] name

as defendant 'the head of the department, agency, or unit, as appropriate....'" *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 540 (5th Cir. 1992) (quoting 42 U.S.C. § 2000e-16(c)). Terry has named the Bureau of Prisons, along with the Attorney General. In a Title VII action against the Bureau of Prisons, the U.S. Attorney General is the proper defendant. *See id.* at 544. Terry's claims against the BOP, therefore, should be dismissed. Accordingly, the undersigned addresses Terry's claims against the current United States Attorney General Garland.

**B.     Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff does not provide direct evidence of discrimination, Title VII claims proceed under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "Analysis under the well-established *McDonnell Douglas* framework proceeds as follows: (1) the plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action; and if that burden is satisfied; (3) the plaintiff must offer evidence that the proffered reason is a pretext for racial discrimination." *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 482 (5th Cir. 2009).

Once a plaintiff establishes a prima facie case of discrimination, the burden of production of evidence shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Cannon v. Jacobs*

*Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting *EEOC v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009).

If the employer meets its burden of production, the burden then shifts to the plaintiff to "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap, Inc.*, 335 F.3d 572, 578 (5th Cir. 2003)). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

1.      Prima facie race- and sex-discrimination claims

To establish a prima facie case of race or sex discrimination under the *McDonnell Douglas* framework, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) he was treated less favorably than "similarly situated" employees who were not members of the protected class. *See, e.g., Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). Defendant asserts that Terry cannot establish that his ratings constitute an adverse employment action or that he was treated less favorably than similarly situated applicants.

First, Defendant argues that Terry did not suffer an adverse employment action. In this case, Terry applied for two positions that constituted a lateral

transfer. Dkt. 49-9. Generally, the denial of a purely lateral transfer is not an adverse employment action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015). The "denial of a purely lateral transfer is not an adverse employment action redressable under Title VII." *Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999). But "denial of a transfer may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other benefits." *Id.* (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007)). This turns on whether "the position sought was objectively better," and key factors include: (1) enhanced benefits or pay; (2) increased responsibility; (3) career advancement; (4) required education, experience, or skill; (5) selection methods; and (6) objective job prestige. *Id.* (citing *Alvarado*, 492 F.3d at 614). This is an objective test and "neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Alvarado*, 492 F.3d at 614. Terry has failed to offer evidence that the two Texas positions were "objectively better" than Terry's position in Hawaii, and, therefore, Terry has failed to carry his burden to establish the non-selection for transfer was an adverse employment action.

Additionally, to the extent Terry contends his reference check ratings constituted adverse employment actions, his claims must fail. For the BAS-2017-0006 job, Terry received 6 "average" ratings from both raters Bruce and Soles. Dkt.

49-10. For the BAS-2017-0017 job, from Ulrich, Terry received 3 "average" and three "above average" ratings, and from Tabar he received 5 "average" and 1 "below average" rating. *Id.* Terry's rating of "average" or his single rating of "below average" do not constitute adverse employment actions. *Johnson v. McDonald*, 623 F. App'x 701, 703-04 (5th Cir. 2015); *Daniel v. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, No. 21-30555, 2022 WL 1055578, at *6 (5th Cir. Apr. 8, 2022).

Defendant also argues that Terry was not "similarly situated" to the candidates who were selected for the two positions, because those candidates were superior. Dkt. 49, at 12. Terry applied for the position of Correctional Officer (Senior Officer) at FCI Bastrop, under vacancy announcement number BAS-2017-0006. Dkt. 49-1. Terry was on the Exception Certificate for this position, along with nine other candidates. Dkt. 49-2; Dkt. 49-9. Applicants on the Exception Certificate are eligible for noncompetitive consideration and are exceptions to the Merit Promotion Procedures. *Id.* These applicants' names on the Exception Certificate are automatically sent to the selecting official for consideration. *Id.*

FCI Bastrop Warden Rodney Myers was the selecting official for this vacancy. Dkt. 49-1. Warden Myers asserts that Terry was considered for the position along with all applicants on the Best Qualified List and Exception Certificates. *Id.* Warden Myers considered the candidates' resumes and reference checks when making the selection. *Id.*; Dkt. 49-10; Dkt. 49-11. Warden Myers received input from Associate Warden Crystal Carter regarding the selection. Dkt. 49-2. Associate Warden Carter conducted reference checks, reviewed resumes for the candidates,

and made recommendations to Warden Myers for consideration for selection. Dkt. 49-3.

Terry received references from Associate Warden David Bruce and Lieutenant Soles from FDC Honolulu. Dkt. 49-10. Both references from FDC Honolulu personnel noted "average" ratings in all categories. *Id.* The position was awarded to Joseph Kuehner, Senior Officer Specialist. Dkt. 49-2; Dkt. 49-9, at 2. Kuehner's sex is male and his race is white. Dkt. 49-11. While Terry received all "average" ratings on his reference check from the selection process, Kuehner received all "above average" ratings on his reference checks during the selection process. Dkt. 49-10. Kuehner was chosen for the based on his resume and reference check. Dkt. 49-3.

Terry also applied for the position of Correctional Officer (Senior Officer) under vacancy announcement number BAS-2017-0017. Dkt. 49-1. Terry was again on the Exception Certificate for this position, along with 33 other candidates. Dkt. 49-2; Dkt. 49-13. Warden Myers was again the Selecting Official for this position. Dkt. 49-2. Warden Myers considered Terry for the position, along with all applicants on the Best Qualified List and Exception Certificates. *Id.* Warden Myers considered the candidates' resumes and reference checks when making the selection. *Id.*; Dkt. 49-15; Dkt. 49-14. Warden Myers again received input from Associate Warden Crystal Carter regarding the selection. Dkt. 49-2; Dkt. 49-3.

Associate Warden Carter provided the resumes and reference checks to Warden Myers for this position. Dkt. 49-3. For this position, Terry received

references from Associate Warden Ulrich and FDC Honolulu Lieutenant Shawn Tabar. Dkt. 49-14. Associate Warden Ulrich rated Terry at "average" in 3 categories and "above average" in 3 categories. *Id.* Associate Warden Ulrich provided a voucher for Terry, stating that he would hire Terry for that position. *Id.* He was not aware of Terry's prior EEO activity when he provided a reference. Dkt. 49-4.

Terry's second line supervisor at FDC Honolulu, Captain Jeffrey Dixon, did not play any role in the selection process and did not provide a reference. Dkt. 49-4. Rather, FDC Honolulu Lieutenant Shawn Tabar averred that he received a call from a Captain at another institution asking to speak to Dixon to ask about Terry. Dkt. 49-6. Tabar explained that Dixon was not available, but the caller asked him what kind of officer Terry was. *Id.* Tabar contends that he informed the caller that Terry was not assigned to his shift, but as far as he knew, Terry was a good officer. *Id.* Tabar asserts that his comments were positive, and he did not make any comments about Mr. Terry which would be considered negative. *Id.* But the individual filling out the reference form on behalf of Tabar noted a rating of "below average" for communication skills and "average" in all other categories. Dkt. 49-14. Tabar provided a voucher for Terry, stating that he would hire Terry for that position. *Id.* Tabar was unaware of any of Terry's prior EEO protected activity. Dkt. 49-6.

Based on the reference check Associate Warden Carter received for Terry, she did not consider Terry a suitable candidate for the vacancy. Dkt. 49-3. She was not aware of Terry's race, sex, or prior EEO activity. *Id.* There were 5 selectees for this

position. Dkt. 49-13. The five selectees had all received "above average" ratings in all categories from both of the reference checks during the selection process. Dkt. 49-2; Dkt. 49-14. Among those five selectees, two had prior EEO activity, four were male, and two were Hispanic. Dkt. 49-17.

Defendant argues that the summary judgment evidence establishes that the candidates selected for the two positions were not "similarly situated" to Terry. The candidates selected for both positions received higher reference ratings in all categories. Dkt. 10; Dkt. 49-14. The selected candidates' resumes likewise demonstrate their superior qualifications relative to Terry. Dkt. 49-11; Dkt. 49-15. The selectee for the BAS-2017-0006 position, Joseph Kuehner, had been employed with BOP for 8 years longer than Terry. Dkt. 49-11. Similarly, all five of the selectees for the BAS-2017-0017 position had more experience in correctional facilities than Terry. Dkt. 49-15.

A genuine issue of material fact exists when evidence shows the plaintiff was "clearly better qualified" than employees outside the protected class who were hired. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993). However, this evidence must be more than merely subjective and speculative. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir.1993); *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). In this

case, Terry offers no such evidence. He does not point to any facts establishing the reviews provided are incorrect or that his qualifications were in fact better than other candidates that were chosen. Terry cannot point to a "similarly situated" individual outside his protected classes who was treated better than he was. Accordingly, he cannot make out a prima facie case for either for race[1] or sex[2] discrimination on this basis. *See Lazarou v. Miss. State Univ.*, 549 F. App'x 275, 280 (5th Cir. 2013) (per curiam).

            2.      Pretext

Defendant has offered evidence that it chose the successful candidates for the two positions based on the applicants' references and qualifications. Dkt. 49-2; Dkt 49-3. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "An explanation is false or unworthy of credence if it is not the real reason for

---

[1] Terry has failed to identify an adequate comparator for either position, who was similarly situated to him and was nonetheless hired. Thus, summary judgement is appropriate. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005).

[2] Terry has not pointed to similarly situated individual outside the protected class, male, who received better treatment. Terry is male. Warden Myers selected a male for the first position and four males for the second position. Terry must point to a female with similar qualifications as himself, who nonetheless was hired. He has failed to do so. *See Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 254 (5th Cir. 2020) (stating the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions, and granting summary judgment for failure to identify a comparator); *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (defining "similarly situated" narrowly, requiring the employees' situations to be "nearly identical"). Terry's sex discrimination claim fails on this additional basis.

the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003).

In this case, Defendant asserts that Terry cannot make out pretext because the decision makers relied on third party references in deciding not to choose him for the positions, and the summary judgment evidence establishes that neither Warden Myers nor Associate Warden Carter was aware of Terry's race or sex at the time of selection. Dkt. 49, at 13; Dkt. 49-2; Dkt. 49-3. Both Warden Myers and Associate Warden Carter testified they were not aware of Terry's race, sex, or involvement in prior EEO activity at the time the hiring decisions were made, and they, therefore, were not factors in the decision. Dkt. 49-2; Dkt. 49-3.

The Fifth Circuit has held that "an employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance … may serve as a legitimate, nondiscriminatory reason for the candidate's nonselection." *Alvarado*, 492 F.3d at 616 (citing *Chapman v. Al Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000)). "It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation." *Chapman*, 229 F.3d at 1034. "The mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (observing that "'[a]bsent evidence that subjective hiring criteria were used as a mask for

14

discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII")))).

Terry has proffered no contravening summary judgment evidence supporting a possible fact issue as to pretext. And there is no summary judgment evidence to suggest that FCI Bastrop officials knew Terry's race or sex at the time of selection, or that the selection criteria were a mask for pretext. The undersigned find that Terry's sex and race discrimination claims fail.

### 3.   Prima facie case of retaliation

Defendant next argues that Terry cannot make out a prima facie case of retaliation. To state a claim for retaliation, as relevant here, a plaintiff must plead that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 830 (S.D. Tex. 2015). Defendants argue that Terry cannot make out the second and third elements of a prima facie case. The undersigned agrees.

The undesigned relies on the analysis above to support that Terry did not suffer an adverse employment[3] action. As to the third element Terry also cannot

[3] Terry contends he was given poor references by FDC Honolulu personnel and non-selected by FCI Bastrop personnel in retaliation for his involvement in the 2016 EEO activity. Dkt. 4-1, at 3. Specifically, Terry suggests that BOP personnel Bautista, Resier, Martinez, and Soles all sought retribution against Terry for his complaints regarding the inmate incident. Dkt. 4-1; Dkt. 16-4; Dkt. 49-16. However, the summary judgment evidence establishes that Bautista, Resier, and Martinez did not provide references for Terry's applications to FCI Bastrop. Dkt. 49-10; 49-14. Of the four individuals who did provide references, Bruce, Soles, Ulrich, and Tabar, only Soles had any involvement in the 2016 EEO complaint involving the inmate incident and subsequent investigation. *Id.* Specifically, Soles was called by the EEO staff to provide a statement in 2016. Dkt. 49-7; Dkt. 49-16. Soles did not give Terry any "below average" ratings and gave Terry all "average" ratings. Dkt. 49-10. This exactly

make out a causal connection as to his EEO activity and non-selection for the two Bastrop positions.

The summary judgment evidence establishes that neither Warden Myers nor Associate Warden Carter was aware of Terry's involvement in prior EEO activity and any EEO activities were not factors in his non-selection for the position. Dkt. 49-2; Dkt. 49-3. "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). Thus, an employer cannot retaliate against an employee if the employer's decisionmaker for the adverse employment decision did not know that the employee had engaged in protected activity at the time of the alleged retaliatory actions. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (concluding decisionmaker could not have retaliated based on protected activity of which it was unaware)); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity,

---

reflected the ratings of Bruce, who was not involved in the EEO complaint process or underlying incident. *Id.* Ulrich gave Terry three "average" and three "above average" ratings, and Tabar gave Terry five "average" and one "below average" rating. Dkt. 49-14. All four reviewers gave Terry average ratings, regardless of their involvement in the incident, and whether they even knew about the complaint. Tabar and Ulrich testified they were unaware of Terry's EEO protected activity and still gave at least 3 "average" ratings. Dkt. 49-6; Dkt. 49-4. Not one reviewer gave Terry anything but an "average" or "below average" on his oral communication skills. Dkt. 49-7; Dkt. 49-16. The summary judgment evidence does not support that Terry was given a negative performance review.

then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.

Because the uncontroverted summary judgment evidence establishes that Wardens Myers and Carter were unaware of Terry's prior complaint, he cannot establish the required causal connection of his prima facie case, and his retaliation claim fails. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020); *Butler v. Collins, et al.*, No. 3:18-CV-00037-E, 2023 WL 318472, at \*13 (N.D. Tex. Jan. 19, 2023) (finding no causal connection between the plaintiffs' protected activities and denial of tenure when no evidence in the record showed that the decisionmaker considered or otherwise knew of the plaintiff's protected activities).

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment, Dkt. 49, and **DISMISS** Plaintiff Terry's claims against Defendants **WITH PREJUDICE**.    **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

17

(14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 22, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE