

**Certified as a true copy and issued
as the mandate on Aug 21, 2023**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals
## for the Fifth Circuit

**FILED**
August 21, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____klw_____
    DEPUTY

_____

No. 23-50130
Summary Calendar
_____

United States Court of Appeals
Fifth Circuit
**FILED**
June 27, 2023
Lyle W. Cayce
Clerk

OSIRIS C. TERRY,

    *Plaintiff—Appellant*,

versus

FEDERAL BUREAU OF PRISONS; MERRICK GARLAND, *U.S. Attorney General*,

    *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-701 RP

_____

Before STEWART, DUNCAN, and WILSON, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-50130
Summary Calendar

———————————

United States Court of Appeals
Fifth Circuit
**FILED**
June 27, 2023
Lyle W. Cayce
Clerk

Osiris C. Terry,

            *Plaintiff—Appellant*,

versus

Federal Bureau of Prisons; Merrick Garland, *U.S. Attorney General*,

            *Defendants—Appellees*.

———————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-701

———————————

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

    In this employment discrimination case, pro se Plaintiff-Appellant Osiris C. Terry appeals the district court's summary judgment in favor of Defendants-Appellees ("the Government"), the Federal Bureau of Prisons ("BOP") and U.S. Attorney General Merrick Garland, dismissing Terry's claims with prejudice. Because we hold that the district court did not err in

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

granting summary judgment in favor of the Government and dismissing Terry's claims, we AFFIRM.

## I. Factual & Procedural Background

In 2014, Terry was employed with the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"). According to Terry, in April 2016, an inmate became "insolent" and directed a "terroristic threat" toward him in a visitation room. Terry states that he remained professional during the incident but another officer, Dwayne Bautista, claims that he observed Terry yelling at the inmate. The incident was internally investigated, but Terry complains that he was still sent to work in the inmate's housing unit after the incident. Terry, who is a Black, Native American male, opines that the incident would have been handled differently if it had involved a Caucasian officer. Specifically, Terry alleges that that if a Caucasian officer would have been involved, the inmate would have been transferred to a special housing unit and the officer would not have been sent to work in the inmate's housing unit after the incident.

In May 2016, Terry contacted the BOP Equal Employment Office ("EEO") and met with a counselor. He was provided with a Notice of Right to File in August of that year but never filed a formal EEO complaint of discrimination or hostile work environment for the incident. He then began seeking employment at other geographic locations within the BOP. He applied at the Federal Correctional Institute in Bastrop, Texas ("FCIB") for the position of: (1) Correctional Officer (Senior Officer), vacancy announcement number BAS-2017-0006 ("Vacancy I"); and (2) Correctional Officer (Senior Officer), vacancy announcement number BAS-2017-0017 ("Vacancy II").

No. 23-50130

### A. Vacancy I

The first position for which Terry applied was Vacancy I, the position of Correctional Officer (Senior Officer) at FCIB under vacancy announcement number BAS-2017-0006. Terry was on the Exception Certificate for this position, along with nine other candidates. Applicants on the Exception Certificate are eligible for noncompetitive consideration and are exceptions to the Merit Promotion Procedures. Additionally, these applicants are automatically sent to the selecting official for consideration. In essence, these types of applicants are applying for a lateral transfer, rather than a promotion.

The selecting official for this vacancy was FCIB Warden Rodney Myers. Myers stated that he considered Terry for the position along with the other applicants on the Best Qualified List and Exception Certificates. He considered each candidate's resume and reference checks and also received input from Associate Warden Crystal Carter regarding the selection. Carter conducted reference checks, reviewed the candidates' resumes, and provided recommendations to Myers for selection consideration.

Terry received references from Associate Warden David Bruce and Lieutenant Soles from FDC Honolulu which noted that he had "average" ratings in all categories. The position was ultimately awarded to Senior Officer Specialist, Joseph Kuehner—a Caucasian male applicant. Kuehner received all "above average" ratings on his reference checks during the selection process and was chosen for the position based on these ratings in addition to his resume. According to Myers and Carter, neither was aware of Terry's race, sex, or involvement in prior EEO activity during the selection process.

3

### B. *Vacancy II*

The second position that Terry applied for was Vacancy II, the position of Correctional Officer (Senior Officer) at FCIB under vacancy announcement number BAS-2017-0017. Like Vacancy I, Terry was on the Exception Certificate for this position, along with 33 other candidates. Myers was also the Selecting Official for this position.

Myers again stated that he considered Terry for the position along with the other applicants on the Best Qualified List and Exception Certificates. He indicated that he considered each candidate's resume, reference checks, and input from Carter regarding the selection. Carter again conducted reference checks, reviewed the candidates' resumes, and provided recommendations to Myers for selection consideration.

Terry received references from Associate Warden Ulrich and FDC Honolulu Lieutenant Shawn Tabar. Ulrich rated Terry at "average" in three categories and "above average" in three categories. Ulrich also provided a voucher for Terry, stating that he would hire Terry for the position. Later, an individual filling out Terry's reference form on behalf of Tabar noted a rating of "below average" for communication skills and "average" in all other categories. Tabar nevertheless provided a voucher for Terry, stating that he would hire him for that position. According to Tabar, he was unaware of any of Terry's prior EEO activity. Based on the reference checks Carter received for Terry, she did not consider him a suitable candidate for the vacancy. Carter and Myers stated again that they were not aware of Terry's race, sex, or prior EEO activity during the selection process. There were five total selectees for this position, all of whom had received "above average" ratings in all categories from both reference checks conducted during the selection process. Among the five selectees, two had prior EEO activity, four were male, and two were Hispanic.

### C. Terry's Non-selection for Vacancies I & II

In January 2018, Terry learned that he was not selected for either of the two correctional officer positions for which he applied at FCIB. Because he was not selected for either Vacancy (I or II), Terry filed suit in federal district court in Hawaii alleging claims of hostile work environment, race and sex discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-16, et seq. He also advanced claims under the No Fear Act. Terry sought $2,000,000 for "the hostile work environment he was subjected to and discriminative behavior."

The district court in Hawaii dismissed several of Terry's claims for failure to exhaust his administrative remedies and transferred his remaining claims—those involving his non-selection for Vacancies I and II—to the Western District of Texas where FCIB is located. After Terry's lawsuit was transferred, the Government moved for summary judgment on his remaining claims. In its motion, the Government argued that (1) the court should dismiss the BOP from the case because the only proper defendant for a federal employee's claim of workplace discrimination or retaliation is the agency or department head, not the entire agency or department, (2) Terry could not make a prima facie case of discrimination or retaliation; and (3) Terry could not raise an issue of fact as to whether BOP's proffered reasons for its selection decisions were pretextual.

The magistrate judge ("MJ") agreed and issued a report and recommendation ("R&R") that the district court grant summary judgment in favor of the Government. Terry objected to the MJ's R&R so the district court conducted a de novo review. Thereafter, it adopted the MJ's R&R as its own order and dismissed Terry's claims with prejudice for the reasons stated therein. In its order, the district court first granted the Government's motion to dismiss the BOP because it was not a proper defendant to Terry's

5

Title VII claims. The court then went on to analyze his claims pertaining to his non-selection for the two vacant positions and concluded that he failed to make out a prima facie case: (1) for either race or sex discrimination (and also failed to present contravening evidence as to pretext), and (2) in support of his retaliation claim. Terry filed this pro se appeal of the district court's order.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment de novo." *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a)). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III. DISCUSSION

As a preliminary matter, it appears that Terry advances at least two arguments in his primary brief on appeal which are not properly before this court because he failed to raise them before the district court. These

No. 23-50130

arguments relate to his claims that: (1) "the district [c]ourt incorrectly applied and/or considered the 'implied false certification theory of liability' by impermissibly weighing the evidence relative to claims for payment, materiality, and conspiracy" and (2) the Government violated the Uniformed Services Employment and Reemployment Rights Act of 1994. Because neither of these arguments were adequately raised before the district court, we will not address them on appeal. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal.").[1] As to his remaining arguments, affording Terry's pro se brief a liberal construction,[2] he appeals the district court's dismissal of his claims related to his non-selection for Vacancies I and II. Terry alleges that he was not selected for these positions due to his status as a Black, Native American male (discrimination) and because of his prior EEO activity (retaliation). We address each issue in turn.

*A. Discrimination*

A plaintiff may prove a claim of intentional discrimination either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Circumstantial evidence cases are analyzed under the

---

[1] To the extent Terry attempts to appeal the district court of Hawaii's dismissal of his hostile work environment and related claims for failure to exhaust his administrative remedies, or the court's dismissal of his claims under the No Fear Act on grounds that the Act does not create a private right of action, we do not address those issues herein because Terry's notice of appeal pertains exclusively to the order of the federal district court for the Western District of Texas which only addressed Terry's Title VII claims related to his non-selection for Vacancies I & II and the dismissal of his claims against the BOP.

[2] *See Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) ("We give *pro se* briefs a liberal construction." (citation omitted)).

No. 23-50130

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973):

> Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy*, 492 F.3d at 556. If the plaintiff successfully establishes a prima facie case under the *McDonnell Douglas* framework, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If the employer meets its burden of production, the ultimate burden shifts back to the plaintiff who must then prove that the employer's proffered reason is merely a pretext for a real discriminatory purpose. *Id.* To meet his burden, "the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *Id.*

### (1) Adverse Employment Action

Because the record adequately supports that Terry is both a member of a protected group and is also qualified for the positions at issue, we begin with whether he has established an adverse employment action. This court has "analyzed the adverse employment action element in a stricter sense than some other circuits." *Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (internal quotation marks and citation omitted). We have determined "that Title VII was only designed to address '*ultimate* employment decisions, not to address every decision made by

8

employers that arguably might have some tangential effect upon those ultimate decisions.'" *Id.* (citation omitted). Likewise, we have concluded that "[r]efusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision [because] [s]uch a refusal is not akin to acts such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 879 (internal quotation marks and citation omitted).

Nevertheless, we have also determined that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits." *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007)). In other words, "if the position sought was objectively better, then the failure to award the position to the plaintiff can constitute an adverse employment action." *Id.* To determine "whether the new position is objectively better, a number of factors may be relevant." *Id.* These include "whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious." *Id.* This inquiry is objective and "neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Id.*

Here, the district court concluded that Terry failed to establish a prima facie case of discrimination because he could not show that he was subjected to an adverse employment decision. We agree. As an initial matter, because the positions for which Terry applied were considered lateral transfers, he was required to provide evidence that the two Texas positions were "objectively better" than his position in Hawaii. *Id.* On appeal, Terry

9

argues that if he had been chosen for a position in Texas, he would have been able to: buy a cheap house (as opposed to an apartment), send his kids to better schools, get better pay, and have a better quality of life.

As an initial matter, Terry provides no argument as to why his pay would be better in Texas. Additionally, the other factors he points to are unrelated to whether the positions in Texas were "objectively better" than his position in Hawaii. Instead, his arguments only relate to his "subjective impressions as to the desirability of the new position" and thus, are not sufficient to "render the position a promotion." *Id.* He has therefore failed to present an adequate argument as to how his non-selection for the lateral transfers constituted an adverse employment action on the basis that the Texas positions were "objectively better" than his position in Hawaii. *Id.* For these reasons, we agree with the district court that Terry failed to carry his burden of establishing that he was subjected to an adverse employment action when he was not selected for the two vacant positions in Texas. *Id.*

Terry also argues that his reference check ratings were adverse employment actions because he was "unfairly rated." But his argument is belied by the record. As the district court observed, Terry received mostly "average" ratings, three "above average" ratings, and one "below average" rating.[3] Even if he could show that he was "unfairly rated," his argument still fails because this court has explicitly held that "a low performance evaluation alone is not an adverse employment action." *Daniel v. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, No. 21-30555, 2022 WL 1055578, at *6 (5th Cir. Apr. 8, 2022) (citation omitted). Moreover, even if a poor performance evaluation could constitute an adverse employment action, it

---

[3] The record indicates that Terry received a total of twenty "average" ratings, three "above average" ratings, and one "below average" rating.

would be a stretch for us to conclude that one below average rating out of twenty-one total ratings could qualify as such. For these reasons, we agree with the district court that Terry's ratings did not qualify as adverse employment actions. *Id*.

### *(2) Similarly Situated Candidates*

We likewise agree with the district court that Terry has failed to show that the candidates that were selected for the two positions were "similarly situated" to him because they were in fact, superior candidates. *See McCoy*, 492 F.3d at 556. As the district court reasoned, the candidates selected for both positions received higher reference ratings than Terry in all categories and the selected candidates' resumes indicated superior qualifications to Terry's. In addition, the selected candidate for Vacancy I had eight more years of employment experience with the BOP than Terry and all five of the selectees for Vacancy II had more experience in correctional facilities than Terry. Thus, Terry has failed to show that the candidates chosen were "similarly situated" to him. *Id*. For these same reasons, Terry cannot raise a genuine issue of material fact by showing that he was "clearly better qualified" than the selected candidates. *See Walther v. Lone Star Gas, Co.*, 952 F.2d 119, 123 (5th Cir. 1992) (noting that a plaintiff can raise a genuine issue of material fact sufficient to survive summary judgment by presenting evidence that he was "clearly better qualified" than the candidate outside of his protected class that was ultimately hired).

In conclusion, we agree that Terry has failed to present a prima facie case of discrimination with respect to his gender or his race. *See McCoy*, 492 F.3d at 556. Because he fails to do so, we need not continue our analysis under the *McDonnell Douglas* burden-shifting framework by addressing the Government's arguments related to its legitimate, nondiscriminatory reasons for its hiring decisions. *Id*. at 557 (explaining that, under the

*McDonnell Douglas* framework, the burden does not shift "to the employer to articulate a legitimate, nondiscriminatory reason for its employment action" until the "the plaintiff successfully establishes a prima facie case" of discrimination).

### B. Retaliation

To the extent that Terry adequately briefs an argument with respect to retaliation, his claim on this issue also fails. "To establish a prima facie case of retaliation, an employee must show '(1) [he] engaged in a protected activity'; (2) '[he] suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)). If the plaintiff successfully establishes his prima facie case, "the employer has the burden of production to provide a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1000 (internal quotation marks and citation omitted). "If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* (citation omitted). "[T]he burden of persuasion remains with the employee throughout" the analysis. *Id.* (citation omitted).

Because we have already held supra that Terry has failed to present evidence that he was subjected to an adverse employment action, we likewise hold that he cannot establish a prima facie case of retaliation. *Id.* Even if he had established an adverse employment action, we agree with the district court that he cannot show a causal connection between his protected EEO activity and his non-selection for Vacancies I and II because he has failed to present evidence that either Myers or Carter was aware of his involvement in prior EEO activity. *Id.* Moreover, even if Terry could show they were aware,

12

No. 23-50130

he fails to point to evidence in the record that his EEO activity was a factor considered in his non-selection for the two vacancies. For these reasons, we hold that Terry has failed to establish a prima facie case of retaliation. *Id.*

In sum, because Terry has failed to provide competent summary judgment evidence in support of his claims that he was discriminated against on account of race or sex, or that he was retaliated against because of his prior protected EEO activity, when he was not selected for the two vacant positions in Texas, we hold that the district court did not err in rendering summary judgment in favor of the Government with respect to his Title VII claims.[4][5]

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of the Government, dismissing Terry's claims with prejudice.

---

[4] We also affirm the portion of the district court's order granting the Government's motion to dismiss the BOP from this suit because it was not a proper defendant to Terry's Title VII claims. *See Skoczylas v. Fed. Bureau of Prisons*, 961 F.2d 543, 544 (5th Cir. 1992) ("The statute requires that a Title VII suit against the federal government name as defendant 'the head of the department, agency, or unit, as appropriate.'" (quoting 42 U.S.C. § 2000e–16(c))).

[5] To the extent that Terry attempts to make an argument related to the district court's transfer of venue from Hawaii to Texas, he has waived any such argument for failure to adequately brief it. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 711 n.3 (5th Cir. 2020) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned.").

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 21, 2023

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 23-50130    Terry v. Federal Bur of Prisons
                            USDC No. 1:21-CV-701

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                      Sincerely,

                                      LYLE W. CAYCE, Clerk

                                      By: _____
                                      Melissa V. Mattingly, Deputy Clerk
                                      504-310-7719

cc:
    Ms. Liane Ngin Noble
    Mr. Osiris C. Terry